IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**MARY E. PATINO,**                    Case 3:14 CV 1749

      Plaintiff,                    Judge Jeffrey J. Helmick

      v.                    Magistrate Judge James R. Knepp, II

**COMMISSIONER OF SOCIAL SECURITY,**

      Defendant.                    REPORT AND RECOMENDATION

## INTRODUCTION

Plaintiff Mary Patino filed a Complaint against the Commissioner of Social Security seeking judicial review of the Commissioner's decision to deny disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Doc. 1). The district court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). This matter has been referred to the undersigned for Report and Recommendation pursuant to Local Rule 72.2(b). (Non-document entry dated August 11, 2014). For the reasons stated below, the undersigned recommends affirming in part and reversing and remanding in part, the Commissioner's decision to deny benefits.

## PROCEDURAL BACKGROUND

Plaintiff filed for DIB and SSI on March 11, 2011, alleging an onset date of November 19, 2009. (Tr. 348, 498). Plaintiff applied for benefits due to multiple sclerosis ("M.S."). (Tr. 348). Her claims were denied initially and upon reconsideration. (Tr. 394, 414). Plaintiff then requested a hearing before an administrative law judge ("ALJ"). (Tr. 421). Plaintiff, represented by counsel, and a vocational expert ("VE") testified at a hearing before the ALJ on December 3, 2012, after which the ALJ found Plaintiff not disabled. (Tr. 293-347). The Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of the

Commissioner. (Tr. 4); 20 C.F.R. §§ 404.955, 404.981.  Plaintiff filed the instant action on August 8, 2014. (Doc. 1).

## FACTUAL BACKGROUND

### *Personal Background and Testimony*

Born February 18, 1969, Plaintiff was 40 years old as of the alleged onset date. (Tr. 42). She had an associate's degree and past work as a dental hygienist. (Tr. 321-22). She lived with her husband and two-year-old daughter. (Tr. 320). Plaintiff had her driver's license but did not drive often. (Tr. 321). She believed she could not work because her M.S. caused balance problems, loss of fine motor skills, and fatigue. (Tr. 324).

Plaintiff stated her M.S. had gotten progressively worse in the two years preceding the hearing and while, at times, she would get better, it always returned worse than before. (Tr. 324). Plaintiff stated she had flare-ups about once a month but never knew how long they were going to last, her most recent one lasted four months. (Tr. 336-37). She stated she used a cane for balance but that it was not prescribed to her and the only alleviation for her fatigue and balance issues was rest. (Tr. 325). Plaintiff also had difficulty sleeping because of leg cramps, she usually only slept two or three hours a night and took a nap during the day. (Tr. 326-27). She took Celexa and Mag-Ox without side effects. (Tr. 324-25). She also had difficulty with sensation loss, numbness and tingling in her hands and feet, and uncontrolled bladder. (Tr. 337-38).

Plaintiff testified if her husband is at home, she was capable of caring for her daughter but when she was alone, the daughter was with her grandparents. (Tr. 328). She stated she could watch her daughter and take care of her essential needs "for the most part." (Tr. 328). Plaintiff could microwave meals, do laundry – both her daughter's and her own, help her daughter in the bathroom, and drive her daughter to doctor's appointments. (Tr. 329, 331). She also reported that

2

while she is capable of grocery shopping and attending to her personal hygiene alone, she often had balance problems or became fatigued. (Tr. 329-30). Plaintiff liked to read and was capable of understanding her books but occasionally had problems remembering things. (Tr. 330-31). She stated she saw her family once a week but that was the extent of her social life, a change from a few years earlier where she reported weekly socialization with friends. (Tr. 332, 630).

She estimated she could walk for about 20-30 feet before having to take a break for a few minutes due to fatigue and lack of balance. (Tr. 332). She also estimated she could stand for up to ten minutes, had no problems sitting for extended periods, had reduced hand strength by 50%, and lacked the ability to finger. (Tr. 332-34).

*Relevant Medical Evidence[1]*

On December 2, 2009, Plaintiff reported her pain as zero out of ten on the severity scale. (Tr. 651). At this visit, she denied weakness, paresthesia, and syncope but did complain of fatigue. (Tr. 651-52). Brendan Bauer, M.D., her primary physician, observed decreased sensation in all extremities, normal gait, and normal range of motion in all extremities. (Tr. 652-54). Dr. Bauer reported Plaintiff also had increased pain at bedtime and was having significant cognitive issues. (Tr. 654).

In April and June 2010, Plaintiff reported her pain as a zero out of ten on pain severity scale and complained only of fatigue at her visit. (Tr. 643-44, 647-48). She also reported no flare-ups from her M.S. (Tr. 644, 650). Dr. Bauer observed decreased sensation in all extremities, normal gait, normal range of motion, and found Plaintiff to be stable overall. (Tr. 646, 648-49).

---

1. The following summary includes medical records submitted to and considered by the Appeals Council after the ALJ hearing and decision were concluded.

In March 2011, Plaintiff complained of fatigue, blurry vision, weakness, paresthesia, syncope, and general right side numbness. (Tr. 639). Dr. Bauer noted that while her sensation was intact, it was decreased in all extremities tested. (Tr. 640). He also observed normal gait and normal strength and range of motion in her extremities. (Tr. 640-41). However, he assessed the right sided numbness as an "exacerbation of [t]he multiple sclerosis" and stated her M.S. was worsening. (Tr. 641).

In June 2011, Plaintiff complained of neuropathy, numbness and tingling in her legs, fatigue, headache, back pain, muscle cramps, weakness, and stiffness. (Tr. 659-60). Dr. Bauer observed Plaintiff's gait was worse and she was having issues walking. (Tr. 660). By September, Plaintiff was again reporting chronic fatigue, generalized muscle weakness, and numbness and tingling in both her hands and feet. (Tr. 733). Dr. Bauer noted her gait was worse, unsteady upon walking, and worsening memory and sleep. (Tr. 734). A few months later in January 2012, Plaintiff was still reporting chronic fatigue and easy agitation but denied muscle cramps, weakness, back pain, or headaches. (Tr. 727-28).

In April 2012, Plaintiff's main complaints had not changed but she reported a stable gait and denied any falls. (Tr. 723-24). Her sensation, range of motion, and strength remained the same upon observation however, Dr. Bauer reported paresthesia as well. (Tr. 724-25). By August 2012, Plaintiff continued to complain of fatigue, headache, muscle weakness, and now tongue numbness however, Dr. Bauer observed normal gait, normal strength, and normal range of motion. (Tr. 706-08, 710-13). Dr. Bauer did note Plaintiff reported more falls and increased leaning to the left which was causing more difficulties in her activities of daily living. (Tr. 711). Dr. Bauer assessed Plaintiff with an active flare-up of her M.S. that was not responding to current medication. (Tr. 713). On November 20, 2012, Plaintiff returned to Dr. Bauer with the

4

same complaints of weakness, instability, and fatigue yet, Dr. Bauer noted her flare-up was improving. (Tr. 740). Her sensation, range of motion, and strength observations remained consistent with her previous visits but Dr. Bauer also observed notable difficulty in her ability to walk without an assistive device. (Tr. 741-42).

In January 2013, Plaintiff sustained a broken left ankle from a fall. (Tr. 56, 59-62, 282-84). The fracture required surgical intervention including the placement of screws followed by Plaintiff being required to wear a boot for immobilization. (Tr. 45, 49, 53). After the fall and surgery, she was admitted into Birchaven Retirement Village for three months for recuperation. (Tr. 116). It was noted on multiple occasions that Plaintiff was non-compliant with medical advice to not put any weight on the foot however, upon removal of the surgical screws it was reported she was doing well. (Tr. 45, 51, 62).  Following this incident, she underwent physical therapy for her ankle and to improve her stability but upon discharge it was noted she had "poor stand balance [and] poor joint stability of other limbs". (Tr. 95-104, 160). In September 2013, Plaintiff underwent surgery to treat stress urinary incontinence to which she responded fairly well. (Tr. 14-25).

*Opinion Evidence*

In March 2011 in a report to the Ohio Department of Job & Family Services, Dr. Bauer summarized Plaintiff's complaints as weakness in all extremities, inability to stand or walk for more than 30 minutes, decreased sensation in all extremities, chronic fatigue, and tingling throughout the body. (Tr. 635). He opined she was markedly limited in bending, reaching, handling, and doing repetitive foot movements. (Tr. 636).

A year later, Maria Legarda, M.D., opined Plaintiff's physical RFC included occasionally lifting ten pounds, frequently lifting or carrying less than ten pounds, standing or walking at least

two hours out of an eight hour day, and unlimited ability to push and pull. (Tr. 690, 694). She also opined Plaintiff could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, or crawl. (Tr. 691). In terms of manipulative limitations, Dr. Legarda found Plaintiff had the unlimited ability to reach, handle, and finger except that her feeling was limited due to numbness and reduced sensation. (Tr. 691). Dr. Legarda further opined Plaintiff had no visual, communicative, or environmental limitations except that she was to avoid extreme heat, fumes, and hazardous conditions. (Tr. 691-92).

### State Agency Reviewers

Leigh Thomas M.D., limited Plaintiff to occasionally lifting or carrying twenty pounds, frequently lifting or carrying ten pounds, and standing or walking six hours out of an eight hour workday. (Tr. 353). She was also restricted from exposure to vibrations and hazardous conditions. (Tr. 355).

On reconsideration, Jerry McCloud M.D., confirmed Dr. Thomas' RFC determination but removed the limitation that Plaintiff could not be exposed to vibrations. (Tr. 377).

### ALJ Decision

In January 2013, the ALJ concluded Plaintiff had the severe impairments of multiple sclerosis, optic neuritis, and obesity; but these severe impairments did not meet or medically equal any listed impairment. (Tr. 298-301). The ALJ then found Plaintiff had the RFC to perform sedentary work except that she could occasionally lift or carry ten pounds, frequently lift or carry five pounds, stand or walk for two to four hours in a workday, frequently feel and handle bilaterally, and occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl. (Tr. 302). Plaintiff would also require a cane for balance, could never climb ladders, ropes, or

scaffolds, and must avoid exposure to vibrations and hazards such as moving machinery and unprotected heights. (Tr. 302).

Considering the VE testimony and Plaintiff's age, work experience, and RFC, the ALJ found Plaintiff could work in the national economy as a hand mounter, document preparer, and telephone quotation clerk. (Tr. 306).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less

than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process – found at 20 C.F.R. § 404.1520 – to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters,* 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The court considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is she determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

Plaintiff argues the ALJ erred because (1) he violated the treating physician rule with respect to Dr. Bauer's opinion; (2) the RFC lacked substantial evidence; (3) he improperly evaluated Plaintiff's credibility; and (4) he improperly evaluated Plaintiff's M.S. at Step Three. (Doc. 14, at 7). The Court will discuss Plaintiff's argument regarding Step Three first, followed

by an analysis of Plaintiff's credibility, the treating physician rule, and lastly, a review of the evidence supporting the RFC.

**Step Three**

At step three, an ALJ must determine whether the claimant's impairment 'meets or is equivalent in severity to a listed . . . disorder.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 653 (6th Cir. 2009) (citing 20 C.F.R. § 1520(d)(2)). In doing so, an ALJ must compare medical evidence with the requirements for listed impairments at step three. *May v. Astrue*, 2011 WL 3490186, at *7 (N.D. Ohio 2011). If a claimant meets or equals the requirements of a listed impairment, then the claimant is considered conclusively disabled. *Rabbers*, 582 F.3d at 653 (citing § 404.1525(a)). However, it is the claimant's burden to show she meets or equals a listing impairment at step three. *Her v. Comm'r of Soc. Sec*., 203 F.3d 388, 391 (6th Cir. 1999). Consistent with this burden of proof, remand is only appropriate when the record raises a "substantial question" of whether a Plaintiff meets a listing. *Sheeks v. Comm'r of Soc. Sec.,* 544 F. App'x 639, 641-42 (6th Cir. 2013) (citing *Abbott v. Sullivan*, 905 F.2d 918, 925 (6th Cir. 1990)).

There is no "heightened articulation standard" in considering the listing of impairments; rather, the court considers whether substantial evidence supports the ALJ's findings. *Snoke v. Astrue*, 2012 WL 568986, at *6 (S.D. Ohio 2012) (quoting *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006)). However, the court must find an ALJ's decision contains "sufficient analysis to allow for meaningful judicial review of the listing impairment decision." *Snoke*, 2012 WL 568986, at *6; *see also May*, 2011 WL 3490186, at *7 ("In order to conduct a meaningful review, the ALJ's written decision must make sufficiently clear the reasons for his decision.").

The court may look to the ALJ's decision in its entirety to justify the ALJ's step-three analysis. *Snoke*, 2012 WL 568986, at *6 (citing *Bledsoe*, 165 F. App'x at 411).

Plaintiff alleges that substantial evidence supports a conclusion that she meets Listing 11.09C. (Doc. 14, at 13; Doc. 18, at 5-7). Listing 11.09C states a Plaintiff must prove they have "significant, reproducible fatigue of motor function with substantial muscle weakness on repetitive activity, demonstrated on physical examination, resulting from neurological dysfunction in areas of the central nervous system known to be pathologically involved by the multiple sclerosis process." Listing 11.09C, 20 C.F.R. pt. 404, subpt. P, app. 1. Plaintiff cites to Dr. Bauer's exam findings to demonstrate that this criteria has been met, specifically notations that Plaintiff's lower left extremity strength is a 4/5 however, Plaintiff ignores the remainder of Dr. Bauer's findings in those same examinations which find normal strength. (Doc. 18, at 6). For example, on almost every exam noted by Plaintiff of reduced strength to 4/5, there are ample other findings of full strength at 5/5 in the hamstrings, hips, biceps, neck, and ankle. (*See* Tr. 640-41, 644-45, 648-50, 652-54, 661-62, 706-08, 718-19, 725-26, 729-30, 735-36, 741-42). On review of the medical records it is clear the ALJ had substantial evidence on which to conclude that while Plaintiff's M.S. was severe, it did not cause "substantial muscle weakness" such that a conclusive finding of disability was warranted.

She also argues the ALJ failed to provide "a meaningful review of the medical evidence" as relates to her M.S. such that substantial evidence cannot exist to support the ALJ's conclusion. (Doc. 14, at 14). As stated above, a finding of substantial evidence to support a Listing conclusion can be found throughout the ALJ's entire opinion. *Bledsoe*, 165 F. App'x at 411. The ALJ summarized the medical evidence – such as her multiple reports of stable symptoms – with sufficient specificity to demonstrate to Plaintiff why the Listing was not met. (Tr. 303). Plaintiff

10

has not proven that a substantial question exists as to whether she meets Listing 11.09C nor did the ALJ fail to provide adequate explanation for his findings thus, the Court recommends the ALJ be affirmed as to Step Three.

### Credibility

Plaintiff's next assignment of error centers around the ALJ's alleged failure to consider the relapsing/remitting nature of M.S. in making his credibility determination. (Doc. 14, at 12). Analysis of alleged disabling symptoms turns on credibility and an ALJ is not bound to accept as credible Plaintiff's testimony regarding symptoms. *See Hickey-Haynes v. Barnhart*, 116 F. App'x 718, 726-27 (6th Cir. 2004); *Cohen v. Sec'y of Dep't of Health & Human Servs.*, 964 F.2d 524, 529 (6th Cir. 1992). When a claimant's statements about symptoms are not substantiated by objective medical evidence, the ALJ must make a finding regarding the credibility of the statements based on a consideration of the entire record. SSR 96-7p, 1996 WL 374186, *1. "Because of their subjective characteristics and the absence of any reliable techniques for measurement, symptoms are difficult to prove, disprove, or quantify." SSR 82-58, 1982 WL 31378, *1.

In evaluating credibility of Plaintiff's complaints an ALJ considers certain factors:

(i) [A claimant's] daily activities;

(ii) The location, duration, frequency, and intensity of [a claimant's] pain or other symptoms;

(iii) Precipitating and aggravating factors;

(iv) The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate your pain or other symptoms;

(v) Treatment, other than medication, [a claimant] receive[s] or ha[s] received for relief of [Plaintiff's] pain or other symptoms;

11

(vi) Any measures [Plaintiff] use or ha[s] used to relieve [a claimant's] pain or other symptoms; and

(vii) Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(3).

Ultimately, it is for the ALJ, not the reviewing court, to judge the credibility of a claimant's statements. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (ALJ's credibility determination accorded "great weight"). "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). The Court is "limited to evaluating whether or not the ALJ's explanations for partially discrediting [claimant's testimony] are reasonable and supported by substantial evidence in the record." *Jones*, 336 F.3d at 476. The Court may not "try the case de novo, nor resolve conflicts in evidence . . . " *Gaffney v. Bowen*, 825 F.2d 98, 100 (6th Cir. 1987).

Here, the ALJ found Plaintiff not entirely credible because her activities of daily living, such as caring for her young daughter, conservative treatment of her M.S., and lack of any treatment for mental impairments undermined her testimony that she was disabled. (Tr. 305). All of these reasons are supported by the record, but Plaintiff alleges the ALJ did not make a determination of whether these activities of daily living occurred during periods of remission such that they would not indicate an ability to undertake sustained employment. *See Parish v. Califano*, 642 F.2d 188, 193 (6th Cir. 1981); *Wilcox v. Sullivan*, 917 F.2d 272, 277 (6th Cir. 1990). It is true that with episodic disorders the ALJ should consider the frequency and duration of flare-ups however; the ALJ's credibility determination is consistent with a  finding that Plaintiff suffers from relapsing/remitting M.S., a condition which at certain times will allow

Plaintiff to undertake a relatively normal life. Thus, the ALJ's finding that Plaintiff, at times, is capable of more than she attested to is consistent with the medical evidence and the nature of the disease. The ALJ's conclusion included analysis of the proper factors was reasonable based on the available evidence.

The Court is limited to determining whether the ALJ applied the appropriate standard to the credibility assessment. *Cruse*, 502 F.3d at 542. It is certainly true that Plaintiff can construe these facts in a different light; however that does not alter the reasonableness of the ALJ's conclusions that Plaintiff's activities of daily living, treatment efforts, and medical evidence do not wholly support her credibility. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). From a review of the opinion and the record, the ALJ had substantial evidence to support the conclusion that Plaintiff was not entirely credible.

### *Treating Physician*

Next, the Plaintiff argues the ALJ failed to identify any inconsistent evidence that would undermine Dr. Bauer's RFC opinion to the point that it would be entitled to little weight. (Doc. 14, at 16; Tr. 304). The Defendant argues substantial inconsistent evidence exists and the indirect attack rule deems any failure on the part of the ALJ to particularly identify that evidence, as harmless error. *See Nelson v. Comm'r of Soc. Sec.,* 195 F. App'x 462 (6th Cir. 2006); (Doc. 17, at 11).

Generally, the medical opinions of treating physicians are afforded greater deference than those of non-treating physicians. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007); *see also* SSR 96-2p, 1996 WL 374188. "Because treating physicians are 'the medical professionals most able to provide a detailed, longitudinal picture of [a plaintiff's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be

13

obtained from the objective medical findings alone,' their opinions are generally accorded more weight than those of non-treating physicians." *Rogers*, 486 F.3d at 242 (quoting 20 C.F.R. § 416.927(d)(2)).

A treating physician's opinion is given "controlling weight" if it is supported by (1) medically acceptable clinical and laboratory diagnostic techniques; and (2) is not inconsistent with other substantial evidence in the case record. *Wilson v. Comm'r of Soc. Sec*., 378 F.3d 541, 544 (6th Cir. 2004). The requirement to give controlling weight to a treating source is presumptive; if the ALJ decides not to do so, he must provide evidentiary support for such a finding. *Id.* at 546; *Gayheart v. Comm'r of Soc. Sec.,* 710 F.3d 365, 376-77 (6th Cir. 2013). When the physician's medical opinion is not granted controlling weight, the ALJ must give "good reasons" for the weight given to the opinion. *Rogers*, 486 F.3d at 242 (quoting 20 C.F.R. § 416.927(d)(2)).

"Good reasons" are reasons "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Rogers*, 486 F.3d at 242 (quoting SSR 96-2p, 1996 WL 374188, at *4). When determining weight and articulating good reasons, the ALJ "must apply certain factors" to the opinion. *Rabbers v. Comm'r Soc. Sec. Admin*., 582 F.3d 647, 660 (6th Cir. 2009) (citing 20 C.F.R. § 404.1527(d)(2)).   These factors include the length of treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the treating source. *Id.* While an ALJ is required to delineate good reasons, he is not required to enter into an "exhaustive factor-by-factor analysis" to satisfy the requirement. *See Francis v. Comm'r of Soc. Sec. Admin.*, 414 F. App'x 802, 804-05 (6th Cir. 2011).

The ALJ gave Dr. Bauer's opinion little weight because it was inconsistent with the medical evidence and opined that Plaintiff was disabled, a conclusion reserved for the ALJ. (Tr. 304). While an ALJ's reasoning in regards to a treating physician's opinion weight may be brief, a single statement asserting inconsistency, without more, is not sufficient to make clear the reasons why the treating physician is accorded little weight. *See Allen v. Comm'r of Soc. Sec.,* 561 F.3d 646, 651 (6th Cir. 2009); *Friend v. Comm'r of Soc. Sec.* 375 F. App'x 543, 551-52 (6th Cir. 2010). If the ALJ does not provide good reasons for discounting a treating physician's opinion, remand is appropriate unless harmless error exists. *Blakely*, 581 F.3d at 409.

The Sixth Circuit has found harmless error can be established, in limited circumstances, through an indirect attack of a treating physician's opinion. *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 464 (6th Cir. 2005) (finding an ALJ could meet the "good reasons" requirement with "his analysis of [a doctor's] other opinions or his analysis of [Plaintiff's medical] problems in general." *Hall,* 148 F. App'x at 470. In subsequent cases, the Sixth Circuit has made limited use of the indirect attack rule when an ALJ has thoroughly evaluated the record. *See e.g., Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir. 2006) (holding ALJ adequately addressed opinion by indirectly attacking both its consistency and supportability with other record evidence); *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) (to satisfy an indirect attack, the ALJ must "identif[y] 'objective clinical findings' at issue [or discuss] their inconsistency with [the doctor's] opinion").

Here, the ALJ did not adequately discuss the inconsistent medical evidence elsewhere in the opinion to satisfy the requirements of an indirect attack. The ALJ summarized the medical record but did not go further in identifying the particular evidence which contradicted Dr. Bauer's opinion. At best, the ALJ's summarization showed Plaintiff had a typical case of

15

relapsing/remitting M.S., characterized by periods of exacerbation which caused increased weakness, instability, and paresthesia followed by periods of remission where Plaintiff partially recovered from the attack but still complained of fatigue and weakness. (Tr. 303-04). The ALJ provided a faithful rendition of the medical record and Plaintiff's testimony in his opinion however, that alone is not enough to demonstrate inconsistency with Dr. Bauer's opinion. Thus, the Court recommends the case be remanded to allow for the ALJ to discuss Dr. Bauer's opinion in more depth.

*RFC*

Lastly, Plaintiff alleges the ALJ's RFC was not based on substantial evidence because it failed to account for the non-exertional limitations opined by Dr. Legarda. (Doc. 14, at 11). Considering the fact that the ALJ must review the weight given to Dr. Bauer's opinion and the potential effect it could have on the RFC determination, the Court declines to address the issue of whether or not omission of Dr. Legarda's non-exertional limitations was in error.

## CONCLUSION

Following review of the arguments presented, the record, and the applicable law, the undersigned finds the Commissioner's decision denying DIB and SSI is supported in part by substantial evidence, and therefore recommends the Commissioner's decision be affirmed as to the ALJ's Step Three and credibility determinations, and reversed and remanded as to his treating physician analysis.

s/James R. Knepp II
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time

16

WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981).